UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────┐
│                             │
│ Zaher Zahrey,               │
│                             │
│              Plaintiff,     │
│                             │
│                             │      Civil Action No. 98-4546
│         -v.-                │      (DCP)(JCF)
│                             │
│ City of New York, et al.,   │
│                             │
│              Defendants.    │
│                             │
│                             │
└─────────────────────────────┘
```

[The court amends its January 7th order to recharacterize
Zahrey's right to a fair trial claim as an action for violation
of his right to procedural due process rooted in the Fifth, Sixth
and Fourteenth Amendments; Plaintiff's motion to reargue partial
grant of summary judgment is otherwise DENIED.]

Dated: April 14, 2009

Joel B. Rudin for Plaintiff.

Michael Cardozo, Marilyn Richter, Corporation Counsel of the City
of New York, for Defendants.

### OPINION

POGUE, Judge:[1] Plaintiff Zaher Zahrey ("Zahrey") moves the
court, under Local Civil Rule 6.3 and Federal Rule of Civil
Procedure 59(e), to reconsider and/or allow reargument on the
court's partial grant of summary judgment in favor of Defendants.
See Zahrey v. City of New York, No. 98-4546 (DCP)(JCF), 2009 WL

---

[1] Judge Donald C. Pogue of the United States Court of
International Trade, sitting by designation.

54495 (S.D.N.Y. Jan. 7, 2009) ("<u>Zahrey</u>" or "January 7th order").[2]

The court's January 7th order denied Defendants' summary judgment motion regarding the questioning and use at Zahrey's trial of a witness, Sidney Quick ("Quick"). At the same time, however, the court granted significant parts of Defendants' summary judgment motion with regard to Zahrey's remaining allegations against the Defendants.[3]

Zahrey's current motion for reconsideration/reargument alleges five issues upon which Zahrey claims the court erred in its January 7th order: (1) recognition of a superseding cause of Zahrey's incarceration following revocation of his bail; (2) limitation of Zahrey's due process claims; (3) grant of summary judgment on

---

[2] Familiarity with this prior opinion is presumed. In general terms, the court's January 7th order granted partial summary judgment in Zahrey's 1998 civil action against various municipal and county entities and employees ("Defendants"). Zahrey's action alleges that Defendants violated his constitutional rights by subjecting Zahrey to a criminal prosecution and a departmental trial based upon allegedly fabricated evidence. Specifically, Zahrey's complaint alleged violations pursuant to 42 U.S.C. §§ 1981, 1983 and 1985, in addition to pendent state claims of malicious prosecution and negligent hiring and training.

[3] Individual Defendants moved for summary judgment on grounds of, among other things, lack of sufficient evidence, absolute and qualified immunity, lack of proximate causation, collateral estoppel, and inability to establish a claim for state or federal malicious prosecution or any other constitutional tort. The City of New York and Kings County ("Municipal Defendants") and Howard Safir and Charles Hynes ("Official Defendants") did not move for summary judgment on the specific claims alleged against them, including negligent hiring and training.

2

Zahrey's claim of civil conspiracy; (4) grant of summary judgment to Defendants Little and Ponzi with regard to certain polygraph evidence; and (5) denial of trial with regard to Zahrey's allegation of special injury. For the reasons given below, the court amends its prior order to clarify its grant of summary judgment as to Zahrey's procedural due process fair trial claims, but otherwise DENIES Zahrey's motion.

## I. Standard of Review

Reconsideration of a judicial order is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." <u>In re Health Mgmt. Sys. Inc. Sec. Litig.</u>, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citation omitted). Accordingly, in order to prevail in a motion for reconsideration or reargument, the moving party "must demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion," <u>Lichtenberg v. Besicorp Group Inc.</u>, 28 F. App'x 73, 75 (2d Cir. 2002) (quoting <u>Fulani v. Brady</u>, 149 F.R.D. 501, 503 (S.D.N.Y. 1993), <u>aff'd sub nom.</u> <u>Fulani v. Bentsen</u>, 35 F.3d 49 (2d Cir. 1994)), that "might reasonably be expected to alter the court's decision." <u>Jones v. Donnelly</u>, 487 F. Supp. 2d 418, 419 (S.D.N.Y. 2007) (citing <u>Lichtenberg</u>, 28 F. App'x at 75). Alternatively, "[r]econsideration may be granted to correct clear error, prevent manifest injustice or review the court's decision in light of the

3

availability of new evidence." Word v. Croce, No. 01 Civ. 9614 (LTS)(DFE), 2004 U.S. Dist. LEXIS 3643, at *7 (S.D.N.Y. Mar. 9, 2004) (quoting Parrish v. Sollecito, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003)).

"A court must narrowly construe and strictly apply [Local] Rule 6.3 [providing for reconsideration] so as to avoid duplicative rulings on previously considered issues and to prevent the rule from being used as a substitute for appealing a final judgment." Jones, 487 F. Supp. 2d at 419 (citing Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999); In re Houbigant, Inc., 914 F. Supp. 997, 1001 (S.D.N.Y. 1996)); see also Word, 2004 U.S. Dist. LEXIS 3643, at *7. Thus, a motion for reconsideration is not an opportunity for the moving party "to reargue those issues already considered when a party does not like the way the original motion was resolved." In re Houbigant, Inc., 914 F. Supp. at 1001.

Applying this standard, the court will consider, in turn, each of Zahrey's objections.

## II. Proximate Causation

Although Zahrey was originally granted bail in the criminal prosecution against him, U.S. Magistrate Judge Azrack subsequently revoked Zahrey's bail, resulting in a period of incarceration prior to trial. Zahrey seeks to hold Defendants liable for that incarceration. In its January 7th order, the court held that the bail revocation hearing testimony of Sidney Quick's mother, Hannah

4

Quick -- that Zahrey called her on the telephone and threatened her
-- broke the chain of proximate causation between Sidney Quick's
allegedly fabricated evidence and Zahrey's bail revocation; thus,
the court held that Zahrey could not hold Defendants liable for his
incarceration subsequent to his bail revocation. See Zahrey, 2009
WL 54495, at *24.

Zahrey claims that the court overlooked four "controlling"
principles of proximate causation.  First, "[a] proximate cause
determination does not require a jury to identify the liable party
as the sole cause of harm; it only asks that the identified cause
be a substantial factor in bringing about the injury." Hydro
Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 15 (2d Cir.
2000).  Second, if a decision-maker was pressured by Defendants or
"influenced" by tainted evidence, the decision-maker's decision can
neither be deemed independent of Defendants' wrongdoing nor a
"superseding" cause. Higazy v. Templeton, 505 F.3d 161, 177 (2d
Cir. 2007).  Third, Defendants' cannot allege superseding cause
unless "the intervening decision-maker would have precipitated the
deprivation of liberty, even in the absence of the antecedent
misconduct." Id. (quoting Zahrey v. Coffey, 221 F.3d 342, 352 n.8
(2d Cir. 2000) ("Coffey")).  Fourth and finally, a plaintiff need
not show that the defendant could "anticipate the precise manner of
the accident or the exact extent of injuries . . . where the
general risk and character of injuries are foreseeable." Derdiarian

v. Felix Contracting Corp., 414 N.E.2d 666, 671 (N.Y. 1980).

In applying these principles, Zahrey argues that Defendants relied upon Sidney Quick's testimony in convincing U.S. Magistrate Judge Azrack and U.S. District Judge Gershon that Hannah Quick testified truthfully.[4]  Zahrey cites to Higazy, 505 F.3d at 175, and Coffey, 221 F.3d at 351-52, to emphasize that Hannah Quick's testimony could not have been an independent cause, because Quick's testimony "was used to influence the court's decision to revoke plaintiff's bail and to detain him through trial." Pl.'s Mem. in Supp. of His Mot. to Reargue Partial Grant of Summ. J. ("Pl.'s Mem.")  4.   In particular, Zahrey insists that, given the inconsistencies in Hannah Quick's testimony,[5] Defendants were able to revoke Zahrey's bail only by heavily relying upon Sidney Quick's

_____

[4] Zahrey characterizes this court's January 7th order as holding that "the magistrate judge's decision, whether correct or not, was an independent cause of plaintiff's damage, for which defendants are not responsible." Pl.'s Reply Mem. of Law in Supp. of His Mot. to Reargue Partial Grant of Summ. J. ("Pl.'s Reply") 1.  As such, he complains that this court failed to correctly apply Higazy and Coffey.  However, Zahrey misrepresents the court's proximate cause holding; the court instead held that the testimony of Hannah Quick broke the chain of causation. See Zahrey, 2009 WL 54495, at *24.

[5] Despite having told Corrigan and Wirth that the threatening caller did not give his name, though she recognized the voice as Zahrey's -- based on hearing his voice during a short meeting over two years earlier -- Hannah Quick changed her story on the witness stand and said that the caller identified himself as Zahrey. Defs.' Ex. on Their Mot. for Summ. J. ("Defs.' Ex.") 35 at 15; Defs.' Ex. 36 at 7.  While testifying, she also mistakenly identified someone else as Zahrey. Defs.' Ex. 36 at 11, 36.  When confronted with these inconsistencies by the court, Hannah Quick stated she was "so nervous." Id. at 65.

coerced testimony. Zahrey cites to Judge Azrack's comments during the hearing[6] and her subsequent judgment,[7] to demonstrate that the court, in revoking Zahrey's bail, did indeed heavily rely on Sidney Quick's stories. However, Zahrey references evidence already found by the court to be either unsubstantiated or covered by absolute immunity.[8] As such, the court will not entertain these particular

---

[6] Zahrey points to Assistant U.S. Attorney Martin Coffey's October 30, 1996 letter to the court to revoke Zahrey's bail, asking the court to consider Hannah Quick's testimony as well as the allegations in the indictment. See Defs.' Ex. 34. In response to Zahrey's counsel's argument that a police officer such as Zahrey would never risk threatening the mother of a witness and give his name, Judge Azrack noted: "The government alleges very serious crimes against [Zahrey] and he allegedly committed them while he was a police officer. He's obviously, if you believe the government's charges, used to taking risks." Defs.' Ex. 38 at 12.

[7] "[S]uch behavior as identifying himself would be entirely consistent with the defendant's apparent personality. Anyone such as the defendant who allegedly committed the charged crimes, while on the police force, would necessarily have to be an aggressive and arrogant risk taker. . . . Thus, I find this type of active intimidation consistent with his personality." Defs.' Ex. 38 at 26. U.S. District Judge Gershon upheld the Magistrate's revocation of bail, as the latter was entitled to rely on "the nature of the crimes of which plaintiff is accused." United States v. Zahrey, No. 96 CR 910 (E.D.N.Y. Nov. 7, 1996) (order affirming revocation of bail).

[8] Zahrey claims that Coffey and Corrigan, prior to offering Hannah Quick's testimony, argued to Judge Azrack that "there is such a serious risk here, considering the seriousness of the offenses, two homicides, acts of violence, his background as someone who uses influence and intimidation in trying to gain his way, that this Court should detain him." Defs.' Ex. 35 at 10. Zahrey argues, as he has previously, that Defendants intentionally failed to correct Hannah Quick's false testimony that she had no idea that Quick was cooperating with federal and state authorities in the Zahrey case. Additionally, Zahrey repeats his allegations that he has produced "overwhelming

7

arguments.

Nonetheless, Zahrey does present two grounds for rehearing on this issue that this court will address. He first urges that it was foreseeable to Defendants, when coercing Sidney Quick's statements, that Quick's testimony would be used in any bail-related proceeding. The Bail Reform Act, 18 U.S.C. § 3142(g), Zahrey insists, compelled the court to consider "the nature and circumstances of the offense charged," "the weight of the evidence against the person" and "the person's character" -- all considerations which, according to Zahrey, involved reliance upon Quick's allegations. Zahrey also takes the argument one step further, and urges that it was reasonably foreseeable to Defendants, in improperly obtaining Quick's testimony, that "almost any event  .  .  .  would result, in the context of Quick's allegations, in Zahrey's detention without bail." Pl.'s Mem. 6-7 (emphasis omitted). The court agrees it would be a reasonable inference that it was foreseeable to Defendants that, when

_____

evidence that defendants knowingly exploited testimony by Hannah Quick." Pl.'s Mem. 3. According to Zahrey, Hannah Quick's "fear" given her knowledge of her son's cooperation served as a motive for lying about the Zahrey telephone call, and Defendants knowingly hid this motive from the court. Id. 8-10. Zahrey also again points to taped telephone conversations between Quick and his mother while Quick was in jail, attempting to construe these conversations as evidence that Hannah Quick was convinced by her son that she needed to lie and claim that she was "threatened" in order to obtain relocation. Id. 10. Zahrey also faults the court for ignoring Defendants' withholding of exculpatory evidence during the bail revocation hearing: namely, the fact that Quick's testimony was "improperly manufactured." Id. 11.

8

allegedly coercing Quick, such testimony would be used to incarcerate Zahrey, whether pursuant to an initial bail hearing or after trial.

But the harm at issue here, i.e., incarceration following a subsequent bail revocation hearing, is not similarly foreseeable.[9] In New York, a tortfeasor is liable when the tort victim "is harmed by an occurrence resulting from ['an unreasonable risk of harm arising from one or more particular foreseeable hazards']." Di Ponzio v. Riordan, 679 N.E.2d 616, 619 (N.Y. 1997) (citing Restatement (Second) of Torts § 281, cmt. e & illus. 3 (1965)).

---

[9] As an initial matter, 18 U.S.C. § 3148, the section pursuant to which the bail revocation application was filed, does not necessarily compel consideration of a criminal defendant's charges. Section 3148(b) allows for, but does not compel, the court to consider the section 3142(g) factors:

> The judicial officer [in deciding whether to revoke a person's bail] shall enter an order of revocation and detention if, after a hearing, the judicial officer--
>     (1) finds that there is--
>         (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
>         (B) clear and convincing evidence that the person has violated any other condition of release; and
>     (2) finds that--
>         (A) based on the factors set forth in section 3142(g) of this title [18 USCS § 3142(g)], there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
>         (B) the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. § 3148(b) (emphasis added).

9

"In contrast, 'where the harm was caused by an occurrence that was not part of the risk or recognized hazard involved in the actor's conduct, the actor is not liable.'" Id.   The New York Court of Appeals further states:

> where an individual breaches a legal duty and thereby causes an occurrence that is within the class of foreseeable hazards that the duty exists to prevent, the individual may be held liable, even though the harm may have been brought about in an unexpected way. On the other hand, no liability will result when the occurrence is not one that is normally associated with such hazards.

Id. (emphasis added).

The Second Circuit emphasizes that "[t]he goal of the Court's § 1983 jurisprudence has been to tailor liability to fit the interests protected by the particular constitutional right in question," and "§ 1983 damages should be made available only for risks that are 'constitutionally relevant.'" Townes v. City of New York, 176 F.3d 138, 148 (2d Cir. 1999) (quoting John C. Jeffries, Jr., Damages for Constitutional Violations: The Relation of Risk to Injury in Constitutional Torts, 75 Va. L. Rev. 1461, 1475 (1989)). As the court concluded in its January 7th order, in allegedly procuring questionable testimony from Sidney Quick, Defendants risked violation of Zahrey's Fourth Amendment and fair trial rights.  Once released on bail, however, Hannah Quick's report to the police interfered with Zahrey's bail agreement with the government pending trial.  After obtaining Quick's testimony and Zahrey's indictment, and agreeing to Zahrey's bail, Defendants'

10

actions had ceased; the use of the tainted evidence came into play only after a superseding cause effected its use. See, e.g., Wray v. City of New York, 490 F.3d 189, 193-95 (2d Cir. 2007) (holding that an erroneous decision of a trial judge admitting legally inadmissible evidence broke the chain of causation); Townes, 176 F.3d at 147 (same) ("Townes does not plead conduct tantamount to malicious prosecution or false imprisonment. He alleges only a violation of his Fourth Amendment rights via an unreasonable seizure and search. By the time Townes was arraigned and filed his motion to suppress the handguns and cocaine, the defendants' allegedly tortious conduct had long since ended."). In Townes and Wray, similar to this case, independent acts, far removed from the defendants', resulted in the use of the allegedly tainted evidence. These independent acts were thus considered too remote from the original tortious act to permit liability. See Wray, 490 F.3d at 195 ("It is always possible that a judge who is not misled or deceived will err; but such an error is not reasonably foreseeable, or . . . it is not the 'legally cognizable result' of an investigative abuse"); Townes, 176 F.3d at 147 ("The state trial court, which alone had the power to suppress the improperly obtained evidence, had control over the ultimate outcome of Townes's case").

To draw the line with regard to liability, New York case law analyzes the foreseeability of the superseding act itself.  To

11

establish a prima facie case of proximate cause, a plaintiff must show "that the defendant's negligence was a substantial cause of the events which produced the injury." Maheshwari v. City of New York, 810 N.E.2d 894, 898 (N.Y. 2004) (quoting Derdiarian v. Felix Contracting Corp., 414 N.E.2d 666, 670 (N.Y. 1980)).  Yet:

> [w]here the acts of a third person intervene between the defendant's conduct and the plaintiff's injury, the causal connection is not automatically severed. In such a case, liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence.

Derdiarian, 414 N.E.2d at 670.  An intervening act may break the causal nexus when it is "extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant's conduct." Id.; Maheshwari, 810 N.E.2d at 898.    Such an intervening act "'must be a new and independent force,' which was not 'set in motion by the defendant's own wrongful acts,'" Lapidus v. State, 866 N.Y.S.2d 711, 721 (N.Y. App. Div. 2008) (quoting Campbell v. Cluster Hous. Dev. Fund Co., 668 N.Y.S.2d 634, 635 (N.Y. App. Div. 1998); Mesick v. State, 504 N.Y.S.2d 279, 282 (N.Y. App. Div. 1986)), and must rise "to such a level of culpability as to replace the defendant's negligence as the legal cause." Lapidus, 866 N.Y.S.2d at 722.

Applying this New York authority to the facts alleged here, the court again concludes that Hannah Quick's report to the police that she received a telephone call, and her subsequent testimony to this effect, was not reasonably foreseeable.  Contrary to Zahrey's

12

assertions, he has provided no evidence to the court that
Defendants played any part in causing the threatening telephone
call, Hannah Quick's report to the police or her testimony. The
court finds that her act - an act that was "independent" of
Defendants' conduct and unforeseeable "in the normal course of
events" -- breaks the chain of causation.

Finally, determinations of legal or proximate cause involve
attention to public policy. Derdiarian, 414 N.E.2d at 670 ("the
concept [of proximate cause] stems from policy considerations that
serve to place manageable limits upon the liability that flows from
negligent conduct"); see also Lapidus, 866 N.Y.S.2d at 722 ("the
inquiry is also a policy driven one, aimed at determining 'whether
the defendant's act, without which there would have been no harm to
plaintiff, still bears a substantial nexus to the plaintiff's harm
so as to constitute a proximate cause, or whether the intervening
events have so attenuated the connection of defendant's act to the
plaintiff's harm that fairness or policy dictate extinguishing
defendant's liability'" (quoting Lee S. Kreindler et al., New York
Law of Torts, § 8.1, at 397-98 (West Group 1997))); First
Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 772 (2d Cir.
1994). Holding police officers and other government employees
responsible for the actions of a perjuring witness poses too great
a risk to the operation of the law enforcement process. See Waters
v. N.Y. City Hous. Auth., 505 N.E.2d 922, 923-24 (N.Y. 1987) ("The

common law of torts is, at its foundation, a means of apportioning
risks and allocating the burden of loss. . . . We are . . . bound
to consider the larger social consequences of our decisions and to
tailor our notion of duty so that 'the legal consequences of wrongs
[are limited] to a controllable degree.'") (citations omitted).[10]
Even assuming that Hannah Quick did in fact lie to police about the
telephone call, as noted in the court's January 7th order, courts
will only impose liability on law enforcement for witness perjury
when a plaintiff can demonstrate the perjury was in some part
"attributable to the police." <u>Jenkins v. City of New York</u>, No. 98
Civ. 7170 (JGK)(DFE), 1999 U.S. Dist. LEXIS 15353, at *24 (S.D.N.Y.
Sept. 29, 1999), <u>aff'd</u>, No. 99-9304, 2000 U.S. App. LEXIS 12551 (2d
Cir. June 6, 2000). The court will not expand liability to police
for Hannah Quick's actions absent evidence of this crucial link.

Although "questions concerning what is foreseeable and what is
normal may be the subject of varying inferences [and thus] these
issues generally are for the fact finder to resolve," where "only
one conclusion may be drawn from the established facts . . . the

---

[10] Because the court reaffirms that Hannah Quick's report to
police and subsequent testimony broke the chain of proximate
causation, it need not decide whether the evidence derived from
Sidney Quick could reasonably be viewed as factually causing the
U.S. Magistrate Judge to revoke bail and the U.S. District Judge
to affirm that decision. Furthermore, as stated above, whether
or not these federal judges were "independent decision makers,"
that is, made decisions independent of the influence of the
indictment allegedly procured through Quick's testimony, is
irrelevant to this particular question before the court.

14

question of legal cause may be decided as a matter of law." Derdiarian, 414 N.E.2d at 670; accord Kerman v. City of New York, 374 F.3d 93, 127 (2d Cir. 2004). The latter cases "generally involve independent intervening acts which operate upon but do not flow from" the original tortious act. Derdiarian, 414 N.E.2d at 670; see also Kriz v. Schum, 549 N.E.2d 1155, 1161 (N.Y. 1989); Marenghi v. N.Y. City Transit Auth., 542 N.Y.S.2d 542, 543 (N.Y. App. Div. 1989) ("Intervening acts of third persons do not necessarily prevent a recovery, and it is usually, but not always, a question for the jury whether the intervening act was foreseeable. But where the allegedly negligent act merely furnishes an occasion for an unrelated act producing an injury, and where the injury is not of the kind to be expected from the negligent act, it may be found that the act of a third party is a superceding cause as a matter of law." (citations omitted)), aff'd, 545 N.E.2d 627 (N.Y. 1989) (mem.). This is such a case. Therefore, the court DENIES Zahrey's first ground for rehearing.

### III. Due Process

The court's January 7th order also held that "because the more specific Sixth Amendment fair trial claim lies, Defendants' motions for summary judgment on Zahrey's more generalized Fifth Amendment [substantive] due process claims must be GRANTED." Zahrey, 2009 WL 54495, at *25 (citing County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998); Albright v. Oliver, 510 U.S. 266, 273 (1994)

15

(plurality)); <u>see also</u> <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989).

Zahrey challenges this court's ruling in two ways, each of which

must be rejected.

First, Zahrey argues that the court improperly and unfairly

granted summary judgment <u>sua sponte</u> on this issue without warning.

But in their summary judgment motion, Defendants contended that

Zahrey could not establish a claim for any constitutional tort,

including denial of substantive due process.[11] As such, the issue

of whether Zahrey's evidence fabrication claim amounted to a Fifth

Amendment substantive due process claim was fairly before the

court. In any event, although it is "preferred practice" to allow

parties notice to brief issues previous to granting summary

judgment:

> [w]here it appears clearly upon the record that all
> of the evidentiary materials that a party might submit in
> response to a motion for summary judgment are before the
> court, a <u>sua sponte</u> grant of summary judgment against
> that party may be appropriate if those materials show
> that no material dispute of fact exists and that the
> other party is entitled to judgment as a matter of law.
> . . . The record must, therefore, reflect the losing
> party's inability to enhance the evidence supporting its

---

[11] Defendants specifically moved for summary judgment on the
grounds that:

> Plaintiff cannot establish a state or federal claim for
> malicious prosecution in connection with his criminal
> proceedings . . . . Nor can he establish any other
> constitutional tort in connection with his criminal
> proceedings.

Defs.' Factual Annotated Amended Mem. of Law in Supp. of Their
Mot. for Summ. J. 29.

position and the winning party's entitlement to judgment.

Ramsey v. Coughlin, 94 F.3d 71, 74 (2d Cir. 1996) (internal citations omitted); Pettus v. Horn, No. 04 Civ. 459 (WHP), 2005 U.S. Dist. LEXIS 20591, at *13 (S.D.N.Y. Sept. 21, 2005). Zahrey has not demonstrated to the court, nor can he demonstrate, that granting the court's order procedurally prejudiced him.

> A party is procedurally prejudiced if it is surprised by the district court's action and that surprise results in the party's failure to present evidence in support of its position. If, however, the party either cannot claim to have been surprised by the district court's action or if, notwithstanding its surprise, the party had no additional evidence to bring, it cannot plausibly argue that it was prejudiced by the lack of notice.

Bridgeway Corp. v. Citibank, 201 F.3d 134, 139-40 (2d Cir. 2000) (internal citation omitted). Both parties have had ample time for discovery, and the evidentiary material adduced on this issue was before the court. Moreover, because the court ruled on a purely legal issue, Zahrey can point to no "additional evidence" that could bear on this matter; thus, "the threat of procedural prejudice that typically pertains to sua sponte action is not present in this case." Tech. Express, Inc. v. FTF Bus. Sys. Corp., No. 99 Civ. 11692 (GEL), 2000 U.S. Dist. LEXIS 18518, at *11 (S.D.N.Y. Dec. 12, 2000). Accordingly, the court rejects Zahrey's first argument.

Second, Zahrey disputes the court's conclusion. He argues that, in Coffey, the Second Circuit did in fact characterize Zahrey's evidence fabrication claim as a Fifth Amendment

17

substantive due process claim. See Coffey, 221 F.3d at 349. Thus, Zahrey asks the court to allow both theories to go to the jury. In response, Defendants contend that the discussion of evidence fabrication in Coffey is distinguishable, in that the Second Circuit's analysis "centered around [Zahrey's] liberty deprivation" rather than malicious prosecution.[12] Defs.' Mem. of Law in Opp'n to Pl.'s Mot. to Reargue Partial Grant of Summ. J. ("Defs.' Mem.") 11.

To the court, it is important to avoid confusion on this issue.   Due Process, as provided in the Fifth and Fourteenth Amendments, is not always a clearly defined judicial principle. It has at least three aspects. As Justice Stevens explains:

> [The Due Process Clause of the Fourteenth Amendment] is the source of three different kinds of constitutional protection. First, it incorporates specific protections defined in the Bill of Rights. Thus, the State, as well as the Federal Government, must comply with the commands in the First and Eighth Amendments; so too, the State must respect the guarantees in the Fourth, Fifth, and Sixth Amendments. Second, it contains a substantive component, sometimes referred to as "substantive due process," which bars certain arbitrary government actions "regardless of the fairness of the procedures used to implement them." Third, it is a guarantee of fair procedure, sometimes referred to as "procedural due process": the State may not execute, imprison, or fine a defendant without giving him a fair trial, nor may it take property without providing appropriate procedural

---

[12] Defendants would alternatively have the court dismiss the Fifth Amendment claims, as Defendants are state and local government actors.   Zahrey responds that, as "federal actors," Corrigan and Wirth are potentially liable under the Fifth Amendment. Pl.'s Reply 9 n.1. He also asserts that "[t]o the extent we seek to hold state actors liable for violating plaintiff's due process rights, we rely on either or both the Fifth and the Fourteenth Amendments." Id.

18

safeguards.

Daniels v. Williams, 474 U.S. 327, 337 (1986) (Stevens, J.,
concurring) (citations and footnotes omitted). Substantive due
process, the most general of the Due Process protections, is often
identified within the context of protecting certain fundamental
rights (e.g., bodily integrity, marriage, procreation), see
Albright v. Oliver, 510 U.S. 266, 272 (1994) (plurality), or
protecting individuals from other arbitrary government behavior "so
brutal and so offensive to human dignity" that it "shocks the
conscience" of the court. Rochin v. California, 342 U.S. 165, 172,
174 (1952).

Two of Zahrey's causes of action are placed at issue by his
motion for rehearing. In his complaint, regarding Defendants'
alleged violations of section 1983, Zahrey claims:

> Defendants operated, inter alia, to deprive Plaintiff of
> his rights under the Constitution and the laws of the
> United States: . . .
>
> (c) Pursuant to the due process clauses of the Fifth and
> Fourteenth Amendments to the United States Constitution,
> not to have false, misleading or inherently unreliable
> "evidence" manufactured, fabricated, or created, through
> the use of bribery, coercion, suggestion or other
> improper interrogation techniques, for the purpose of
> using such "evidence" against him in connection with the
> criminal or departmental disciplinary investigations
> and/or proceedings, and/or
>
> (d) Not to be arrested, indicted, prosecuted or detained
> through the knowing use of false, fabricated, misleading,
> or inherently unreliable "evidence," or upon the
> testimony or statements of witnesses who had been
> illegally bribed, coerced or improperly influenced for
> their testimony or statements, in violation of the Due

19

Process Clauses of the Fifth and Fourteenth Amendments
[and] the right to a fair trial under the Fifth, Sixth
and Fourteenth Amendments . . . .[13]

Fifth Amended Compl. ¶ 369.

In its January 7th order, the court dismissed (c) as a
duplicative substantive due process cause of action that was
subsumed in Zahrey's other more specifically-alleged constitutional
violations. Zahrey, 2009 WL 54495, at *25.   The court, however,

---

[13] Zahrey's (d) cause of action originally stated that
Defendants violated his right:

Not to be arrested, indicted, prosecuted or detained
through the knowing use of false, fabricated,
misleading, or inherently unreliable "evidence," or
upon the testimony or statements of witnesses who had
been illegally bribed, coerced or improperly influenced
for their testimony or statements, in violation of the
Due Process Clauses of the Fifth and Fourteenth
Amendments, the right to grand jury indictment under
the Fifth and Fourteenth Amendments, the right to a
fair trial under the Fifth, Sixth and Fourteenth
Amendments, the right to reasonable bail under the
Fifth, Eighth and Fourteenth Amendments, the right to
be free of unreasonable search and seizure under the
Fourth and Fourteenth Amendments, and 18 U.S.C. §§
201(c)(2), 1001, 1503(a), 2 and 371.

Fifth Amended Compl. ¶ 369.   Individual Defendants moved for
summary judgment on, and the court accordingly disposed of,
Zahrey's allegations of violations of his rights to a grand jury
indictment, to reasonable bail, and to be free from unreasonable
search and seizure.   These holdings have not been challenged.
The latter allegation for false arrest was dismissed, in addition
to Zahrey's more general false arrest cause of action for the
violation of his right "[n]ot to be deprived of his liberty or
property or to be arrested, detained or imprisoned except upon
probable cause," id., because it was subsumed within Zahrey's
cause of action for malicious prosecution. Zahrey, 2009 WL 54495,
at *24; see Townes v. City of New York, 176 F.3d 138, 149 (2d
Cir. 1999) (quoting Heck v. Humphrey, 512 U.S. 477, 484 (1994));
Singer v. Fulton County Sheriff, 63 F.3d 110, 117 (2d Cir. 1995).

also refused to grant summary judgment as to Zahrey's fair trial claims in (d). Id. The court couched the "fair trial" violation as pursuant to the Sixth Amendment, id. at *24-25, although this right originates in the Fifth or Fourteenth Amendment right to procedural due process. See Strickland v. Washington, 466 U.S. 668, 684-85 (1984) ("The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment"); United States v. Monsanto, 924 F.2d 1186, 1190 (2d Cir. 1991) (en banc); see also Albright, 510 U.S. at 273-74 n.6 (plurality); Senra v. Cunningham, 9 F.3d 168, 173 (1st Cir. 1993) (claim of "'distortion and corruption of the process of law,' such as 'falsification of evidence or some other egregious conduct resulting in a denial of a fair trial'" constitutes procedural due process claim); Barrett v. United States, No. 76 Civ. 381 (CBM), 1986 WL 14973, at *6 (S.D.N.Y. Dec. 15, 1986) ("'common sense' dictates that allegations of corrupt judicial conspiracy to deprive plaintiff of property without due process by thwarting [his] right to a fair trial is a matter of procedural, not substantive, due process" (quoting Holloway v. Walker, 784 F.2d 1287, 1293 (5th Cir. 1986))); cf. Rutledge v. County of Sonoma, No. C 07-4274 CW, 2008 U.S. Dist. LEXIS 51313, at *12-13 (N.D. Cal. July 1, 2008). Given this relationship, the court amends its January 7th order to recharacterize Zahrey's procedural due process right to a "fair

21

trial" as stemming from both the Sixth as well as the Fifth and/or Fourteenth Amendments.

Zahrey's alleged procedural due process "fair trial" claim addressed in (d) fits squarely within the Second Circuit's holding in <u>Coffey</u>: "there is a constitutional right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigatory capacity, at least where the officer foresees that he himself will use the evidence with a resulting deprivation of liberty." <u>Coffey</u>, 221 F.3d at 344;[14] <u>see also</u> <u>Ricciuti v. N.Y. City Transit Auth.</u>, 124 F.3d 123, 130 (2d Cir. 1997) ("Like a prosecutor's knowing use of false evidence to obtain a tainted conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable 'corruption of the truth-seeking function of the trial process.' . . . When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to

---

[14] Although the U.S. Supreme Court has considered a similar cause of action, involving fabrication of evidence and bribery of witnesses, to fall under the Fourth Amendment, <u>see</u> <u>Albright</u>, 510 U.S. at 274-75 (plurality), the Second Circuit has characterized this right as a procedural due process violation. <u>See</u> <u>Coffey</u>, 221 F.3d at 348-49. Of course, as the Supreme Court noted, the <u>Albright</u> plaintiff did not assert a claim for procedural due process. <u>Albright</u>, 510 U.S. at 271 (plurality). Because evidence fabrication serves to both improperly charge and/or arrest a plaintiff as well as unfairly try him, the <u>Coffey</u> violation, in its essence, involves aspects of both the Fourth Amendment and procedural due process.

a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983.") (internal citations omitted).[15] As the court found sufficient evidence to sustain a cause of action on the elicitation and use of Quick's testimony, the court accordingly denied Defendants summary judgment on this cause of action. Neither party has challenged this holding.

However, with respect to (c) as well as Zahrey's remaining (d) cause of action, the court is unpersuaded by Zahrey's motion. Zahrey argues that the court incorrectly dismissed (c). But this particular cause of action does not pertain to the procedural due process violations addressed in Coffey. Instead, Zahrey's action here must fairly be described as an action for substantive due process, as he is not contesting the use of the Quick evidence in the criminal proceedings, rather he is simply contesting the evidence's creation with the intent for such use, regardless of the ensuing constitutional deprivation. Because of Zahrey's limited circumscription of (c), it is doubtful whether the Second Circuit would even consider (c) to have stated a claim upon which relief should be granted. See Coffey, 221 F.3d at 348 ("The manufacture of

---

[15] Notably, at least in this circuit, such a section 1983 action for a violation of the right to "fair trial" would apparently lie even if a criminal defendant's charges were dismissed prior to trial. See, e.g., Ricciuti, 124 F.3d at 127, 130; Douglas v. City of New York, 595 F. Supp. 2d 333, 346-47 (S.D.N.Y. 2009).

23

false evidence, 'in and of itself,' ... does not impair anyone's liberty, and therefore does not impair anyone's constitutional right"), 352 ("it would be as artificial to focus only on the act of using the evidence, without regard to the consequences of such use, as it would be to focus on the earlier act of fabrication, without regard to the consequences of that act.  The use of fabricated evidence, unaccompanied by such consequences, no more impairs liberty than does the initial fabrication of evidence, unaccompanied by such consequences"), 354 ("We agree . . . that the investigatory act of obtaining evidence known to be false is not itself a violation of a constitutional right. But we disagree with the further point that no valid section 1983 claim is stated where a deprivation of liberty results from the initial act of obtaining evidence known to be false" (emphasis in original)).

In any event, no general substantive due process claim lies. As the court stated before, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" Albright, 510 U.S. at 273 (plurality) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)); County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998); Tenenbaum v. Williams, 193 F.3d 581, 599 (2d Cir. 1999); see also Maliha v. Faluotico, 286 F. App'x 742, 744 (2d Cir. 2008); Russo v.

City of Bridgeport, 479 F.3d 196, 208 (2d Cir. 2007). Zahrey's

allegations center on the coercion of Quick in order to (1) deprive

him of his liberty without probable cause and (2) deprive him of a

fair trial. The former right is covered by the Fourth Amendment, [16]

---

[16] In his plurality opinion, former Chief Justice Rehnquist
provided a general conceptualization of the Fourth Amendment's
protections: "[t]he Framers considered the matter of pretrial
deprivations of liberty and drafted the Fourth Amendment to
address it." Albright, 510 U.S. at 274 (plurality). Justice
Ginsburg, however, espoused a broader reach for the Fourth
Amendment's protection against "seizure." Id. at 278-79
(Ginsburg, J., concurring) ("A person facing serious criminal
charges is hardly freed from the state's control upon his release
from a police officer's physical grip. He is required to appear
in court at the state's command. He is often subject, as in this
case, to the condition that he seek formal permission from the
court (at significant expense) before exercising what would
otherwise be his unquestioned right to travel outside the
jurisdiction. Pending prosecution, his employment prospects may
be diminished severely, he may suffer reputational harm, and he
will experience the financial and emotional strain of preparing a
defense. A defendant incarcerated until trial no doubt suffers
greater burdens. That difference, however, should not lead to the
conclusion that a defendant released pretrial is not still
'seized' in the constitutionally relevant sense. Such a defendant
is scarcely at liberty; he remains apprehended, arrested in his
movements, indeed 'seized' for trial, so long as he is bound to
appear in court and answer the state's charges. He is equally
bound to appear, and is hence 'seized' for trial, when the state
employs the less strong-arm means of a summons in lieu of arrest
to secure his presence in court."); accord id. at 289-90 (Souter,
J., concurring); see also Singer v. Fulton County Sheriff, 63
F.3d 110, 115 & n.4, 116-17 (2d Cir. 1995). As noted in the
court's previous order, the Second Circuit has followed the
broader Ginsburg approach. "[R]equirements of attending criminal
proceedings and obeying the conditions of bail suffice" to
constitute "seizure." Jocks v. Tavernier, 316 F.3d 128, 136 (2d
Cir. 2003) (citing Murphy v. Lynn, 118 F.3d 938, 946 (2d Cir.
1997)). Accordingly, consistent with this circuit's
jurisprudence, Zahrey remained continually protected, by the
Fourth Amendment, from the allegedly fraudulently-procured
indictment that caused his initial arrest through his acquittal
and release from jail.

25

see Maliha, 286 F. App'x at 744 ("Maliha's substantive due process claim thus merges with his Fourth Amendment claim because the former claim arises from the same set of actions that allegedly violated his Fourth Amendment rights; Maliha himself relies extensively on Faluotico's purported falsifications as evidence that probable cause was lacking"); Russo, 479 F.3d at 208-09, the latter by the procedural due process right to a fair trial provided by the Fifth, Sixth and Fourteenth Amendments. See Riciutti, 124 F.3d at 130; Abreu v. City of New York, No. 04-CV-1721 (JBW), 2006 U.S. Dist. LEXIS 6505, at *16-17 (E.D.N.Y. Feb. 22, 2006). The court cannot find, nor has Zahrey presented the court with examples of, any decisions from courts in this circuit which treat evidence fabrication as a denial of substantive due process. Hence, pursuant to Albright, Zahrey's (c) cause of action was properly dismissed.

As to Zahrey's allegations in (d) that he suffered a violation "of the Due Process Clauses of the Fifth and Fourteenth Amendments," Zahrey has not explained whether this involves violations of his substantive or procedural due process rights. In either case, however, this allegation was properly dismissed. If this were an alleged procedural due process claim, the court considers Zahrey's stated violations of fair trial procedural due process, pursuant to "the Fifth, Sixth and Fourteenth Amendments," and procedural violations of "Due Process Clauses of the Fifth and

Fourteenth Amendments," as coextensive, at least in the context of this case. As such, the latter is dismissed as duplicative of the former. See Gill v. City of New York, 02 Civ. 10201 (RWS), 2004 U.S. Dist. LEXIS 6481, at *30-31 (S.D.N.Y. Apr. 16, 2004) (dismissing general due process claims as they had already been considered under an another cause of action using due process analysis, which the court considered to be "identical"); cf. Dawkins v. Williams, 413 F. Supp. 2d 161, 176 n.11 (N.D.N.Y. 2006) (dismissing Fifth Amendment due process violation as duplicative of asserted Fourteenth Amendment violation), rejected in part on other grounds, 511 F. Supp. 2d 248, 251 (N.D.N.Y. 2007); Cimino v. Glaze, 228 F.R.D. 169, 173 (W.D.N.Y. 2005) (same). If the claim were one for substantive due process, for the same reasons as explained above regarding Zahrey's (c) claim, the court would dismiss the allegation pursuant to Albright.

Accordingly, the court's January 7th order is amended to recharacterize the right to "fair trial," under the Fifth, Sixth and Fourteenth Amendments; however, Zahrey's motion as to due process is in all other respects DENIED.

### IV. Civil Conspiracy

Zahrey additionally moves for reconsideration on this court's holding regarding civil conspiracy. According to Zahrey, the court mischaracterized his claim of civil conspiracy to deprive him of his constitutional rights. Zahrey insists that, instead,

27

Defendants conspired to

> manufacture or cause the manufactur[e] of false or
> misleading "evidence" intended for use against plaintiff
> in criminal or departmental disciplinary proceedings, to
> cause the false arrest, malicious prosecution, and
> wrongful imprisonment of plaintiff, and to cause the
> termination and/or modification of plaintiff's position
> as a detective . . . .

Pl.'s Mem. 14 (quoting Fifth Amended Compl. ¶ 366). In order to

accomplish this conspiracy, Zahrey argues, Defendants

> made complaints to cause plaintiff's wrongful criminal
> and departmental prosecution, manufactured false evidence
> for that purpose, and used improper interrogation
> techniques for that purpose, among other things. [17]

Id. 15.   These allegations allow Zahrey to survive summary

---

[17] Zahrey specifically alleges that an implicit agreement
can be inferred given that: (1) Officer Boyce opened and
initially was the Internal Affairs Bureau ("IAB") detective in
charge; (2) KCDAO Assistant District Attorney Guria arranged for
Boyce to question Quick outside his attorney's presence, worked
with Boyce during the investigation, served as Corrigan's
supervisor and stayed up-to-date on the investigation; (3)
Officers Boyce and McWilliams conducted the taped Quick
interrogation together at Sing Sing Prison, after which Boyce
gave the tape to Guria; (4) Wirth presented Zahrey's case to NYPD
and the U.S. Attorney's Office; (5) KCDAO Assistant District
Attorneys Corrigan and Guria, and Officers Wirth, Boyce and
McWiliams, repeatedly met with the U.S. Attorney to encourage
Zahrey's prosecution; (6) Wirth testified before the grand jury
against Zahrey; (7) Corrigan, Wirth and McWilliams conducted
follow-up interviews with Quick, and Corrigan and Wirth
threatened Quick with prosecution and/or made him promises in
order to obtain his grand jury and trial testimony; and (8)
Corrigan, Wirth, Boyce, McWilliams and Guria intentionally
withheld the Quick interview tape from Coffey. Id. 16-17.  The
court notes that, in its January 7th order, it granted Defendants
summary judgment, for insufficient evidence, on Zahrey's claims
that any Defendant intentionally withheld the tape of Zahrey's
Sing Sing interview from prosecutors. Zahrey, 2009 WL 54495, at
*16-17.

judgment, Zahrey further argues, because the conspiracy can be shown with indirect and circumstantial evidence. See LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 427 (2d Cir. 1995) (civil conspiracy "need not be shown by proof of an explicit agreement but can be established by showing that the 'parties have a tacit understanding to carry out the prohibited conduct'" (quoting United States v. Rubin, 844 F.2d 979, 984 (2d Cir. 1988)); the conspirators need be shown only to "share the general conspiratorial objective" (quoting Snell v. Tunnell, 920 F.2d 673, 702 (10th Cir. 1990))). See also Rubin, 844 F.2d at 984 (criminal conspiracy may be shown by "circumstantial evidence"); United States v. Downing, 297 F.3d 52, 57 (2d Cir. 2002) (as long as he understands the "essential nature of the plan," criminal conspirator need not know "details" or participants in conspiracy (quoting Blumenthal v. United States, 332 U.S. 539, 557 (1947))); United States v. Provenzano, 615 F.2d 37, 45 (2d Cir. 1980) (re a criminal conspiracy: "It is a rare case indeed where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel. A conspiracy by its very nature is a secretive operation.").

Zahrey thus concludes that, since the court has found that all Individual Defendants (save Welsome, Hawkins, Little and Ponzi) survive summary judgment on the interrogation and use of Quick's testimony at trial, the court should allow the inference that these

Defendants conspired to deprive Zahrey of his constitutional rights.    Defendants respond that, although the Individual Defendants worked on the Zahrey investigation at different times and in different roles, this does not assert a claim for conspiracy.

The court will not grant Zahrey rehearing or reargument on his claim of civil conspiracy.    In order to survive summary judgment, Zahrey must present more than "conclusory assertions of conspiracy." Gil v. County of Suffolk, 590 F. Supp. 2d 360, 361 (E.D.N.Y. 2008) (noting that plaintiff "offers no more than vague and conclusory assertions of conspiracy, which are not even sufficient to withstand a motion to dismiss." (citing Leon v. Murphy, 988 F.2d 303, 311 (2d Cir. 1993); Polur v. Raffe, 912 F.2d 52, 56 (2d Cir. 1990))).    To establish such a conspiracy, a plaintiff must "provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the [violation of plaintiff's constitutional rights]." Faraq v. United States, 587 F. Supp. 2d 436, 470 (E.D.N.Y. 2008) (quoting Romer v. Morgenthau, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000) (internal quotation marks omitted)) (citing Ting v. United States, 927 F.2d 1504, 1512 (9th Cir. 1991)); see also Robinson v. Allstate, 584 F. Supp. 2d 617, 620 (W.D.N.Y. 2008) ("Where . . . a plaintiff asserts that defendants have conspired to violate his constitutional rights under 42 U.S.C.

§ 1985, the '[p]laintiff must provide some factual basis supporting meeting of minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" (quoting Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003) (internal quotation marks omitted))). A meeting of the minds is difficult to directly prove and may be inferred from circumstantial evidence. See Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999); Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 240 (2d Cir. 1999). "However, 'innuendo, unrelated incidents and conclusory allegations, without any factual basis' are insufficient to support a conspiracy claim." Feacher v. Intercontinental Hotels Group, 563 F. Supp. 2d 389, 400 (N.D.N.Y. 2008) (quoting Adler v. Pataki, 204 F. Supp. 2d 384, 396 (N.D.N.Y. 2002)). Zahrey must provide more evidence than that Individual Defendants agreed to question witnesses or detain Zahrey -- he must establish some factual basis to show that Defendants conspired to deprive him of his rights.

Unfortunately, Zahrey provides no evidence, absent the fact that the Individual Defendants worked together, that such an agreement existed. See Farag, 587 F. Supp. 2d at 470-71 ("Plaintiffs, however, have adduced no evidence whatsoever of a 'meeting of the minds' whose conscious objective was to deprive plaintiffs of their constitutional rights; that Smith and Plunkett presumably had a 'meeting of the minds' when they agreed to detain plaintiffs is insufficient" (emphasis in original)); Cine SK8, Inc.

31

v. Town of Henrietta, 507 F.3d 778, 792 (2d Cir. 2007) (letter written between Board members did not "support a fact-finder's conclusion that the three members of the Board (whose comments would permit a jury to find that they individually acted with racial animus) had an understanding among themselves to do so." (emphasis in original)); Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) ("several telephone calls and other communications" only amounted to show "that Mei and O'Rorke cooperated with Almenas's investigation into Scotto's alleged parole violation"); San Filippo v. U.S. Trust Co., 737 F.2d 246, 256 (2d Cir. 1984) ("at no point in the proceedings has plaintiff alleged one shred of evidence in support of his conclusory assertion of conspiracy, beyond the fact that A.D.A. Crosson and Detective Woike met with defendants prior to their grand jury testimony. We see nothing suspicious or improper in such meetings, which are routine and necessary in the preparation of evidence."). As such, Zahrey's motion on this issue is DENIED.

## V. Little and Ponzi

Next, Zahrey challenges the court's dismissal of his claims against Douglas Little and Joseph Ponzi because prosecutors never used, before the grand jury or at Zahrey's trial, Little's and Ponzi's polygraph evidence -- evidence that was allegedly fraudulently-created from interviews with Quick. According to Zahrey, simply creating and showing Quick's polygraph to

32

prosecutors suffices, and no use in the judicial process is needed to hold Little and Ponzi responsible for malicious prosecution or constitutional torts.

Zahrey's motion on this issue is DENIED.  Zahrey's evidence reflects no more than possible negligence on the parts of Little and Ponzi.  Negligence cannot support a constitutional tort or a malicious prosecution claim.  See Bryant v. Maffucci, 923 F.2d 979, 984 (2d Cir. 1991); O'Neill v. Krzeminski, 839 F.2d 9, 11 n.1 (2d Cir. 1988); see also Savino v. City of New York, 331 F.3d 63, 74 (2d Cir. 2003).

Moreover, as stated before, it is both the creation and the use of fabricated evidence that caused Zahrey constitutional harm. See Coffey, 221 F.3d at 352.  The constitutional deprivations about which Zahrey complains center around Defendants' deprivations of his pretrial liberty without probable cause and his procedural due process right to a fair trial.  Quick's polygraph neither caused nor contributed to these deprivations. See id. ("it would be as artificial to focus only on the act of using the evidence, without regard to the consequences of such use, as it would be to focus on the earlier act of fabrication, without regard to the consequences of that act. The use of fabricated evidence, unaccompanied by such consequences, no more impairs liberty than does the initial fabrication of evidence, unaccompanied by such consequences. For example, in Zahrey's case, his liberty was not impaired until,

after the evidence was both fabricated and used by introducing it in evidence before the grand jury, an indictment was later returned and Zahrey was later arrested.").

As to Zahrey's state malicious prosecution claim, Zahrey can only rebut the indictment's presumption of probable cause by presenting evidence sufficient for a reasonable jury to find "that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." McClellan v. Smith, 439 F.3d 137, 145 (2d Cir. 2006) (quoting Colon v. City of New York, 455 N.E.2d 1248, 1251 (N.Y. 1983)) (emphasis added). "The burden of rebutting the presumption of probable cause requires the plaintiff to establish what occurred in the grand jury, and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the 'premise that the Grand Jury acts judicially[.]'" Rothstein v. Carriere, 373 F.3d 275, 284 (2d Cir. 2004) (quoting Colon, 455 N.E.2d at 1250)).[18]

---

[18] Zahrey references former Chief Judge Sol Wachtler's famous comment that a grand jury, at the behest of a prosecutor, would indict a "ham sandwich." See United States v. Navarro-Vargas, 408 F.3d 1184, 1195 (9th Cir. 2005) (en banc) (citing In re Grand Jury Subpoena of Stewart, 545 N.Y.S.2d 974, 977 n.1 (N.Y. Sup. Ct. 1989), aff'd as modified, 548 N.Y.S.2d 679 (N.Y. App. Div. 1989)). The court declines Zahrey's invitation to question the integrity of the grand jury indictment process without being presented significant evidence to support this proposition. Cf. United States v. Williams, 504 U.S. 36, 47 (1992) (declaring that the grand jury acts as an important "buffer" between the government and the prosecution); Russell v. United States, 369 U.S. 749, 770 (1962) ("To allow ... the court [ ] to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive

Zahrey points to <u>Jones v. City of Chicago</u>, 856 F.2d 985 (7th Cir. 1988), and <u>Robinson v. Maruffi</u>, 895 F.2d 649 (10th Cir. 1990), for the proposition that fabricating evidence that simply affects a prosecutor's decision to prosecute, without more, amounts to actionable conduct. However, as noted by the Defendants, in <u>Jones</u> and <u>Robinson</u>, unlike the facts of Zahrey's case here, both pieces of evidence at issue were indeed presented to the grand jury or in other criminal proceedings. <u>See</u> <u>Jones</u>, 856 F.2d at 989-91 (among other things, the prosecutor testified falsely that victim provided solid identification of Jones as perpetrator, and a fabricated police report indicating that victim and others had identified Jones and provided other information was used to persuade the court to set bail at $250,000, which Jones could not afford; police also withheld exculpatory evidence from prosecutors, Jones, and Jones's attorney during trial in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963)); <u>Robinson</u>, 895 F.2d at 653, 655-56 (bribed witness testified before the grand jury and Robinson was indicted).

Zahrey also complains that it would be unfair to allow

---

the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure.... This underlying principle is reflected by the settled rule in the federal courts that an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form."). In this circuit and in the State of New York, the grand jury is presumed to have acted "regularly" and "judicially." <u>Rothstein</u>, 373 F.3d at 284; <u>Colon</u>, 455 N.E.2d at 1250 (The presumption of probable cause created by an indictment "is founded upon the premise that the Grand Jury acts judicially and it may be presumed that it has acted regularly.").

Defendants to rely on the polygraph in defending this action, while depriving Zahrey of his respective malicious prosecution claim. However, Zahrey remains free to challenge the remaining Individual Defendants' reasonable reliance upon the polygraph in choosing to prosecute Zahrey, the reliability of which the U.S. Supreme Court and many scientific authorities have questioned. See, e.g., United States v. Scheffer, 523 U.S. 303, 309-12 (1998).

## VI. Special Injury

Finally, Zahrey argues that the court's January 7th order granting Defendants summary judgment as to "special injury" was based on errors of law and fact.    Zahrey likens his alleged "disgrace in the department" and temporary denial of backpay, following his suspension without pay, to "provisional" remedies mentioned in Engel v. CBS, Inc., 711 N.E.2d 626, 631 (N.Y. 1999) (citing Groat v. Town Bd. of Glenville, 426 N.Y.S.2d 339, 341 (N.Y. App. Div. 1980)).  Zahrey emphasizes that the Groat court found the requisite "special injury" even though the officer plaintiff had won his case and had been restored to the payroll prior to filing his civil lawsuit. See Groat, 426 N.Y.S.2d at 340.    Zahrey also points to cases that, he argues, stand for the proposition that suspension without pay plus disgrace in the department suffice to show "special injury." See, e.g., First Merchant Bank OSH, Ltd. v. Village Roadshow Pictures (U.S.A.) Inc., No. 01 CIV. 8370 (GEL), 2002 WL 1423063 (S.D.N.Y. June 28, 2002); Campion Funeral Home,

Inc. v. State, 569 N.Y.S.2d 518 (N.Y. App. Div. 1991), appeal denied, 580 N.E.2d 1058 (N.Y. 1991); Fulton v. Ingalls, 151 N.Y.S. 130 (N.Y. App. Div. 1914). Furthermore, Zahrey argues that a reasonable fact-finder could infer that he was "disgraced in the department," given he was subject to numerous press releases issued by the NYPD Commissioner and he was kept on modified status for three years.

Defendants point out that most of Zahrey's alleged injuries arose from his criminal trial, not the departmental proceedings. According to Defendants, the former injuries, which are not "related causally to alleged tortious acts [i.e., the departmental trial]," Lincoln First Bank v. Siegel, 400 N.Y.S.2d 627, 633 (N.Y. App. Div. 1977), may not serve as "special injuries" related to Zahrey's departmental trial. Defendants also argue that Zahrey's post-bail-revocation incarceration caused Zahrey's suspension without pay.

In accordance with New York Civil Service Law § 75(3),[19] Zahrey was suspended without pay for up to thirty days incident to the filing of his criminal and disciplinary charges; Defendants argue

---

[19] New York Civil Service Law § 75(3-a) states that a police officer subject to disciplinary charges may be suspended without pay for up to thirty days. Section 75(3) provides that, if acquitted, a civil servant receives back pay for his period of suspension. Section 75 applies to NYPD Commissioner's revocation of an officer's detective designation. See N.Y. City Admin. Code § 14-103(e), available at
http://public.leginfo.state.ny.us/menugetf.cgi?COMMONQUERY=LAWS.

that, had Zahrey not had his bail revoked, he would have returned to work at full pay on modified assignment after the expiration of thirty days. Defendants note that Zahrey has cited no cases where the imposition of a statutory suspension without pay, for which he was later compensated, coupled with a modified assignment at full pay, constitute "special injury." If it were, Defendants argue, any civil servant brought up on disciplinary charges which result in statutory suspension, and then acquitted, would be able to assert a state claim for malicious prosecution. Such would be contrary to the policy behind the special damages requirement. See Engel, 711 N.E.2d at 629 ("malicious prosecution claims are not encouraged" (citing Ferguson v. Arnow, 37 N.E. 626 (N.Y. 1894)), and the law should avoid "ad infinitum [litigation] with each party claiming that the opponent's previous action was malicious and meritless" (quoting Curiano v. Suozzi, 469 N.E.2d 1324, 1328 (N.Y. 1984))).

The court DENIES this final ground for reargument. A plaintiff may only demonstrate "special injury" by identifying a "highly substantial and identifiable interference with person, property, or business" involving "some concrete harm that is considerably more cumbersome than physical, psychological or financial demands of defending a lawsuit." Id. at 631.[20]

---

[20] Engel derived from a long line of New York Court of Appeals case law limiting civil malicious prosecution actions. See, e.g., Williams v. Williams, 246 N.E.2d 333, 335 (N.Y. 1969);

Concomitant with the October 24, 1996 filing of Zahrey's disciplinary charges, Defs.' Ex. 65, Zahrey was, pursuant to New York law, suspended for up to thirty days.[21] Pl.'s Ex. in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Ex.") D at ¶ 26. Zahrey was also released as per a bail agreement with the government on October 24. See Defs.' Ex. 33. Before the expiration of the thirty days, U.S. Magistrate Judge Azrack revoked Zahrey's bail on November 5. See Defs.' Ex. 38. Thus, pursuant to section 75(3), Zahrey was actually suspended approximately twelve potential work days before being jailed pending trial. Upon criminal acquittal on June 27, 1997, Zahrey remained on modified status at the automobile impound lot, and NYPD delayed giving Zahrey his backpay pending the outcome of his departmental proceeding in May 2000 -- in total, almost three years. Pl.'s Ex. D at ¶¶ 32-37; Defs.' Ex. 66. In all, Zahrey alleges (1) damage to his reputation by press releases and articles, (2) suspension for twelve days pursuant to section 75(3)

---

Burt v. Smith, 73 N.E. 495, 496 (N.Y. 1905) ("Damages are rarely recovered, however, for the malicious prosecution of a civil action, unless person or property is interfered with by some incidental remedy, such as arrest, attachment, or injunction."); Willard v. Holmes, Booth & Haydens, 37 N.E. 480 (N.Y. 1894) ("where a party has been subjected to some special or added grievance, as by an interference with his person, or property, in a civil action, brought without probable cause, he may maintain a subsequent action to recover any legal damage, which he avers, and is able to show, to have been occasioned to him.").

[21] Pursuant to New York Civil Service Law § 75(3-a), NYPD can only suspend an officer for thirty days even if he awaits trial on criminal charges.

prior to his bail revocation, (3) denial of suspension back pay for almost three years, and (4) remaining on modified assignment at the automobile impound lot for three years at full salary.

First, the court again does not find sufficient evidence of damage to reputation to support Zahrey's allegations of "special injury." Zahrey claims that the newspaper articles and press releases show that, as a result of the departmental charges and proceedings, he was "disgraced in the department." In support, Zahrey has presented two newspaper articles, both dated October 17, 1996, see Pl.'s Ex. GGG, and one U.S. Department of Justice press release, dated October 16, 1996. See Pl.'s Ex. FFF. However, the substance of these exhibits relate solely to IAB's investigation and Zahrey's criminal indictment and arrest. They make no mention of Zahrey's departmental disciplinary proceedings. Other than these exhibits, as noted in the court's previous opinion, Zahrey provides the court with no other evidence that he is "disgraced."[22] "[V]ague assertions or general statements" of reputational harm do not suffice. Engel v. CBS Inc., 961 F. Supp. 660, 663 (S.D.N.Y. 1997); accord Engel, 711 N.E.2d at 632.

---

[22] In Zahrey's complaint, he asserts that, on July 1, 1997, Police Commissioner Safir and the Mayor of New York City held a press conference to announce their intention to institute departmental disciplinary proceedings against Zahrey despite his criminal acquittal. Fifth Amended Compl. ¶ 336. However, Zahrey does not cite to the record and the court cannot find any evidence in the record regarding this press conference. Nor has Zahrey asked the court to take judicial notice of any such press conference. See Fed. R. Evid. 201.

Second, the court reaffirms its previous finding of no evidence of "special injury" as to Zahrey's three-year modified assignment and alleged subsequent damage to his career. While on modified assignment, NYPD paid Zahrey his full salary. See Zahrey, 2009 WL 54495, at *22. Zahrey seems to argue that his modified position, working at the automobile impound lot, deprived him of his former career position and future job opportunities. But the court again notes that, after his departmental acquittal, Zahrey requested to remain at the impound lot, chose not to return to his position as a detective and has not sought out promotions. Id.

Third, Zahrey's remaining allegations, that he was suspended without pay for twelve days and that, although he received back pay for this suspension, he had to wait almost three years for it, do not constitute "special injury." The court rejects Zahrey's contention that his suspension without pay categorically qualifies as special injury. Courts analyze the special injury requirement on a case-by-case basis,[23] and the particular cases cited by Zahrey,

---

[23] See, e.g., Zhang v. Goff, No. 25918/2006, 2008 WL 465290, at *3 (N.Y. Sup. Ct. Feb. 1, 2008) (legal fees do not amount to special injury); Tray Wrap, Inc. v. Pac. Tomato Growers Ltd., No. 26782/03, 2008 WL 222495, at *21 (N.Y. Sup. Ct. Jan. 25, 2008) (same); Sankin v. Abeshouse, 545 F. Supp. 2d 324, 328 (S.D.N.Y. 2008) (same; also vague claims of loss of business, without specifics, and arguments that litigation impaired plaintiff's cancer recovery, do not suffice); Loftus v. Arthur, No. 05-1682, 2007 WL 2376883, at *4 (N.Y. Sup. Ct. July 16, 2007) (litigation resulting in delay in building and use of extension of barn did not cause special injuries); Strumpf v. Asdourian, No. 110141/06, 2006 N.Y. Misc. LEXIS 3976, at *8-10 (N.Y. Sup. Ct. Dec. 12, 2006) (specific, verifiable loss of business (e.g., hike in

41

malpractice rates, loss of certain clients) constitutes special injury, but allegations of general loss of business do not); In re Eerie World Entertainment, L.L.C., No. 00-13708 (ALG), 2006 Bankr. LEXIS 770, at *26-28 (Bankr. S.D.N.Y. Apr. 28, 2006) (finding special injury when plaintiff demonstrated a specific, verifiable loss of income, i.e., provided names of clients that refused to do business when they found out about the pending litigation); Wilhelmina Models, Inc. v. Fleisher, 797 N.Y.S.2d 83, 85 (N.Y. App. Div. 2005) (no special damages because no showing of termination of business relationships or staff reductions; revocable "commitment letter" was also insufficient); Brown v. Brown, 343 F. Supp.2d 195, 198 (E.D.N.Y. 2004) ("Bare allegations of emotional distress, pain, and suffering" do not state a claim for civil malicious prosecution); First Merchant Bank OSH, Ltd. v. Village Roadshow Pictures (U.S.A.) Inc., No. 01 CIV. 8370 (GEL), 2002 WL 1423063, at *6 (S.D.N.Y. June 28, 2002) (plaintiff suffered special injuries when defendant obtained an injunction freezing plaintiff's assets); Howard v. City of New York, 741 N.Y.S.2d 687 (N.Y. App. Div. 2002) (corrections officer plaintiff failed to allege special injury when departmental charges filed against her for allegedly appearing in a pornographic video); Dudick v. Gulyas, 716 N.Y.S.2d 407, 410 (N.Y. App. Div. 2000) (finding special injury when plaintiff chiropractor alleged loss of business as a direct result of defendant's conduct, i.e., complaints about plaintiff's methods sent to his clients and disciplinary board); Honzawa v. Honzawa, 701 N.Y.S.2d 411, 413 (N.Y. App. Div. 2000) (attachment of bank accounts constitutes special injury); Engel, 711 N.E.2d at 632 (attorney plaintiff did not plead sufficient special injury when claiming that, when sued by his client's adversary, a conflict of interest was created and increased his work load); Chi Chao Yuan v. Rivera, 48 F. Supp. 2d 335, 349 (S.D.N.Y. 1999) (depriving mother of her children for several months reaches the "threshold" of special injury); Tsafatinos v. Ward, 676 N.Y.S.2d 748, 751 (N.Y. Civ. Ct. 1998) (illegal lockout action amounted to special injury as plaintiff "suffered interference with her property as a result of that claim"); Engel, 961 F. Supp. at 662-65; Kidder, Peabody & Co. v. IAG Int'l Acceptance, Group N.V., No. 94 Civ. 4725 (CSH), 1997 U.S. Dist. LEXIS 12976, at *8-17 (S.D.N.Y. Aug. 27, 1997) (general allegations of reputational harm resulting from a lawsuit, including general assertions of damage to character, reputation, good name, business, and credit, do not amount to special injury; however, plaintiff may show special injury if defendant's filing of lis pendens undermined a contractual relationship and plaintiff lost a client); Venezia v. Sirulnick, 624 N.Y.S.2d 62, 63 (N.Y. App. Div. 1995) ("the mere

service of process without further interference from some provisional remedy does not rise to the level of malicious prosecution"); Furgang v. JMK Bldg. Corp., 583 N.Y.S.2d 610, 612 (N.Y. App. Div. 1992) (defendant's breach of contract action, which only resulted in damages "normally attendant upon being sued," did not allow for plaintiff's malicious prosecution action); Campion Funeral Home, Inc. v. State, 569 N.Y.S.2d 518, 521 (N.Y. App. Div. 1991) (holding that legal expenses and injury to reputation are not enough to show special injury); Salamanca Trust Co. v. McHugh, 550 N.Y.S.2d 764, 765-66 (N.Y. App. Div. 1989) (no order of attachment issued and no property was attached; because not "actual interference" with plaintiff's property, no special injury); Molinoff v. Sassower, 471 N.Y.S.2d 312, 313-14 (N.Y. App. Div. 1984) (holding that having to spend a substantial amount of time corresponding with two insurance carriers and with retained counsel to determine coverage does not constitute special injury); Tedeschi v. Smith Barney, Harris Upham & Co., 548 F. Supp. 1172, 1174 (S.D.N.Y. 1982) (finding no special injury when private individual, not pursuant to court order or authority, withheld plaintiff's paycheck); Hoppenstein v. Zemek, 403 N.Y.S.2d 542, 543-44 (N.Y. App. Div. 1978) (plaintiff did not suffer special injury after being sued for medical malpractice); Drago v. Buonagurio, 402 N.Y.S.2d 250, 251 (N.Y. App. Div. 1978) (same); Lincoln First Bank v. Siegel, 400 N.Y.S.2d 627, 634 (N.Y. App. Div. 1977) (no special injury when evidence demonstrates that the attachment had no effect upon plaintiff's construction project and no property could have been levied on given an IRS levy); Stokes v. Kase, 380 N.Y.S.2d 310, 311-12 (N.Y. App. Div. 1976) (involuntary bankruptcy petition resulted in special injury); Muller v. Star Supermarkets, Inc., 370 N.Y.S.2d 768, 770 (N.Y. App. Div. 1975) (finding no special injury, when plaintiff alleged that defendant's lawsuit served as a blemish to good title and plaintiff thus sold premises on less favorable terms); Williams v. Williams, 246 N.E.2d 333, 335 (N.Y. 1969) (no action for abuse of process lied when defendant filed an action for conspiracy to misappropriate and misuse trade secrets and assets against plaintiff and had copies of summons and complaint printed and circulated to members of the trade); Watson v. City of New York, 293 N.Y.S.2d 348, 353-55 (N.Y. Civ. Ct. 1968) (instituting paternity proceedings can amount to special injury); Chappelle v. Gross, 274 N.Y.S.2d 555, 557-59 (N.Y. App. Div. 1966) (filing of lis pendens alone leads to special injury); J.J. Theatres, Inc. v. V.R.O.K. Co., 96 N.Y.S.2d 271, 273 (N.Y. Spec. Term 1950) (simple allegations that plaintiff is "annoyed, harrassed, disturbed" do not amount to special injury, however a showing of an appreciable effect on

are distinguishable. See Groat, 426 N.Y.S.2d at 340-41 (plaintiff was "suspended without pay, dismissed from the force and, at least temporarily, disgraced in the department and in the community"; the town board dismissed plaintiff from the police force, but the Special Term reversed and ordered him restored to the payroll effective from the date of his dismissal); Fulton, 151 N.Y.S. at 132 (plaintiff was "suspended from duty without pay, and temporarily disgraced in the department"). Unlike in Groat and Fulton, the court here does not find sufficient evidence of disgrace in the department or community attributable to the departmental trial, as mentioned above. In addition, there is no indication that the Groat or the Fulton plaintiffs were compensated in any way for income denied while suspended without pay. In contrast, Zahrey has been completely compensated for all lost income.[24]

---

business - that business decreased and the value of leasehold lessened because of public knowledge of the law suit - will suffice); Schulman v. Modern Indus. Bank, 36 N.Y.S.2d 591, 593 (N.Y. Spec. Term 1942) (refusing to find special injury where plaintiff merely alleged mailing of a notice of levy and issuance of execution to a city marshal); Sachs v. Weinstein, 203 N.Y.S. 449, 456 (N.Y. App. Div. 1924) (involuntary bankruptcy petition resulted in special injury); Reade v. Halpin, 184 N.Y.S. 438, 439-40 (N.Y. App. Div. 1920) (holding that the institution of mental insanity proceedings can lead to special injury); Paul v. Fargo, 82 N.Y.S. 369, 370 (N.Y. App. Div. 1903) (plaintiff sued for conversion did not suffer any damages apart from defending the lawsuit, and thus could not maintain his malicious prosecution action).

[24] See Mosley v. Del. River Port Auth., No. 99-4147 (JBS), 2000 U.S. Dist. LEXIS 22402, at *2-3, *36 (D. N.J. Aug. 7, 2000)

44

Zahrey's main contention is that the delay of his back pay for three years sufficiently analogizes to a "provisional" or "incidental" remedy.  But Zahrey has not pointed the court to any case law directly on this point.  Again, provisional or incidental remedies, or similarly compensable "special injuries," require a "highly substantial and identifiable interference with person, property, or business." Engel, 711 N.E.2d at 631.  Even assuming that New York Civil Service Law § 75(3) would create property rights, particularly for police officers covered by section 75(3-a), section 75(3) allows for back pay only upon acquittal pursuant to departmental proceedings.[25]  Thus any "property" Zahrey would

---

(plaintiff did not allege sufficient special injury when, following disciplinary hearings, was fired, but was returned to his job with backpay and seniority); Hollars v. S.-Pac. Transp. Co., 792 P.2d 1146, 1148, 1151 (N.M. 1989) (following disciplinary hearings, plaintiff was dismissed, but was reinstated and paid a portion of his backpay - the court held he did not demonstrate special injury). Compare Niebur v. Town of Cicero, 212 F. Supp. 2d 790, 799, 812, 816 (N.D. Ill. 2002) (plaintiff suffered special damages, because although he was reinstated with full backpay and benefits, he was then later fired and never reinstated - lost wages plus loss of career or vocation suffices); Hairston v. District of Columbia, 638 F. Supp. 198, 201-02, 204-05 (D.D.C. 1986) (plaintiff did not suffer special injury when denied his backpay after reinstatement pursuant to police department policy).

[25] "Pending the hearing and determination of charges of incompetency or misconduct, the officer or  employee against whom such charges have been preferred may be suspended without pay for a period not exceeding thirty days. . . . If he is acquitted, he shall be restored to his position with full pay for the period of suspension less the amount of any unemployment insurance benefits he may have received during such period." N.Y. Civ. Serv. Law § 75(3). But see N.Y. Admin. Code § 14-115(c), available at http://public.leginfo.state.ny.us/menugetf.cgi?COMMONQUERY=LAWS

have in his back pay would not accrue until his disciplinary acquittal. See Hairston, 638 F. Supp. at 204-05 (finding no constitutionally protected property right in back pay absent a statutory entitlement); NLRB v. Sunshine Mining Co., 125 F.2d 757, 761 (9th Cir. 1942) ("The award of back pay is not a private judgment or a chose in action belonging to the employee, and he has no property right in the award pending his actual receipt of it."); cf. Winston v. City of New York, 759 F.2d 242, 247-48 (2d Cir. 1985) (in the context of pension benefits, "while the Code grant[s] members of the City certain 'contractual' or 'quasi-contractual' rights, only when the statutory conditions for retirement [are] met d[o] those rights vest" (citing Eberle v. LaGuardia, 33 N.E.2d 692, 693 (N.Y. 1941))). Instead, Zahrey's delay in receiving his back pay was, as a necessary part of the process mandated in section 75(3), merely incident to his departmental proceedings. See Loftus, 2007 WL 2376883, at *4 (litigation resulting in delay in building and use of extension of barn did not cause special injuries); Aalfs v. Aalfs, 66 N.W.2d 121, 122-27 (Iowa 1954) (failure to obtain credit from bank, slowdown in manufacturing, and loss of profit not

---

("The commissioner is also authorized and empowered in his or her discretion, to deduct and withhold salary from any member or members of the force, for or on account of absence for any cause without leave, lost time, sickness or other disability, physical or mental; provided, however, that the salary so deducted and withheld shall not, except in case of absence without leave, exceed one-half thereof for the period of such absence; and provided, further, that not more than one-half pay for three days shall be deducted on account of absence caused by sickness.").

46

special injuries); see also Tarver v. Wills, 330 S.E.2d 896, 898-99 (Ga. Ct. App. 1985) (increase in insurance premiums, like attorneys fees, are an "unavoidable incident" of a physician's defense of a medical malpractice case or other litigation); Moiel v. Sandlin, 571 S.W.2d 567, 571 (Tex. Civ. App. 1978) (same).  The court thus finds that Zahrey's evidence does not amount to evidence of special damages.

### VII. Conclusion

In accordance with this opinion:

- The court amends its January 7th order to recharacterize Zahrey's right to a fair trial claim as an action for violation of his right to procedural due process rooted in the Fifth, Sixth and Fourteenth Amendments.

- OTHERWISE, Zahrey's motion is DENIED in its entirety.

It is so ORDERED.

Donald C. Pogue, Judge

Dated:      April 14, 2009
            New York, New York

47